[Cite as *State v. Plymale*, 2021-Ohio-2918.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 20 CAC 110048 |
| GEORGE PLYMALE, II. | : | |
| | : | |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Delaware
Municipal Court, Case No. 20 CRB00760

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      August 24, 2021

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

AMELIA BEAN-DEFLUMER
Delaware City Prosecutor          WILLIAM T. CRAMER
By: ERIC J. BURKETT             470 Old Worthington Road
Assistant Prosecutor             Suite 200
70 North Union Street             Westerville, OH 43082
Delaware, OH 43015

*Gwin, J.,*

{¶1}   Defendant-appellant George Plymale, II ["Plymale"] appeals his conviction after a jury trial in the Delaware Municipal Court.

*Facts and Procedural History*

{¶2}   On June 14, 2020 at approximately 5:25 p.m. Preservation Parks of Delaware County, Park Police Officer Chad Watkins was patrolling Deer Haven Park and noticed a vehicle parked illegally in a spot reserved for maintenance vehicles. The location was a small maintenance area just off of Liberty Road, which used to be a pet trail before the park was converted. The officer testified that the vehicle was parked about a vehicle-and-a-half length off of Liberty Road, and was easily visible from Liberty Road and by houses across the street.

{¶3}   The officer noted that Liberty Road is a fairly busy road with increasingly heavy traffic due to the increased population of the Delaware County area. The park itself has also seen a significant increase in traffic with 500 to 600 vehicles on the weekends. T. at 85.

{¶4}   The officer parked diagonally behind Plymale's pickup truck and approached along the passenger side. Officer Watkins admitted that when he first pulled up, he could not see if anyone was in the truck because Plymale had personal items piled-up in the truck bed. As the officer approached the vehicle, he saw Plymale with his penis exposed. Plymale was holding his penis and rubbing it with his hand. T. at 85; 89; 94. When Plymale saw the officer, he covered his penis and put his hands under his legs. Plymale admitted to the officer that he was masturbating. T. 80; 88; 89; 110-111; 112.

{¶5}    The officer asked Plymale if he had any weapons in the car. Plymale responded that he did not; however Officer Watkins noticed a pocket knife next to him in the car.  The officer asked Plymale to exit the car two or three times; however, Plymale refused. Plymale told the officer not to search his truck. Plymale reached for his keys a couple of times. Officer Watkins believed that Plymale was going to attempt to flee, so he asked for backup officers to make an emergency response. Plymale gave the officer his identification just before back-up arrived. When back-up arrived, Plymale stepped out of the vehicle. Plymale was searched and detained in the back of the patrol car.

{¶6}    Prior to trial, Plymale dismissed one appointed counsel and moved to proceed pro se. At the final pre-trial hearing, the trial court engaged in a lengthy colloquy about the dangers of self-representation. Plymale then knowingly waived his right to counsel and represented himself at trial, with standby counsel assigned.

{¶7}    Plymale testified in narrative form. Plymale indicated that he parked in that location because it was clearly a deserted area with un-trampled grass and no signs that anybody used it as a trail. The area had a maintenance sign and looked like it was just used as a turnaround. Plymale thought it would be a private spot. Plymale testified that he did not think it was a public area because the sign said maintenance vehicles only.

{¶8}    Plymale further testified that he initially stopped just to check his phone because he was looking for a job. Plymale admitted that he was masturbating when the officer asked him what he was doing. Plymale did not believe the officer saw his penis, though, because the officer asked him what he was doing and what was in his hand. Plymale thought the officer believed he was concealing drugs. Plymale laughed and told

the officer he was masturbating and that was his dick. Plymale did not get out of the car right away because he did not think it was a lawful stop.

{¶9}   Plymale was given a summons for public indecency in violation of R.C. 2907.09(A)(2), a third-degree misdemeanor and released.

{¶10}  The jury found Plymale guilty as charged.  The trial court imposed ten days in jail, one year of community control, and a $100 fine plus costs. The terms of community control included a mental health assessment and an order to avoid parks.

*Assignments of Error*

{¶11}  Plymale raises two Assignments of Error,

{¶12}  "I. APPELLANT'S FEDERAL AND STATE RIGHTS TO DUE PROCESS WERE VIOLATED BY A CONVICTION FOR PUBLIC INDECNCY THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶13}  "II. THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A CONVICTION FOR PUBLIC INDECENCY."

I & II.

{¶14}  In his First Assignment of Error, Plymale contends that there is insufficient evidence to support his conviction.  In his Second Assignment of Error, Plymale contends his convictions were against the manifest weight of the evidence.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶15}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570

U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶16} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Plymale's guilt on each element of the crime for which he was convicted beyond a reasonable doubt.*

{¶17} Plymale was found guilty upon one count of public indecency pursuant to R.C. 2907.09(A)(3), which states: no person shall recklessly * * * under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household, engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation.

{¶18} Plymale argues that the state failed to prove that his conduct was likely to be viewed by others in his physical proximity. Additionally, he argues that the state failed to prove that he was reckless. As a result, Plymale argues that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶19} Plymale's first argument lacks merit. According to the settled case law, whether an offender's conduct is actually viewed by others is immaterial to the analysis under R.C. 2907.09. It matters not whether others actually viewed the conduct but rather whether such conduct *would likely have been viewed by others*. *State v. Henry*, 151 Ohio App.3d 128, 783 N.E.2d 609, 2002–Ohio–7180, ¶ 58 (7th Dist.), *citing State v. Johnson*, 42 Ohio App.3d 81, 536 N.E.2d 648 (5th Dist. 1987); *State v. Ramey,* 10th Dist. Franklin No. 11AP-485, 2012-Ohio-1015, ¶16; *In re W.S.,* 11th Dist. Geauga No. 2009-G-2878, 2009-Ohio-5427, ¶40 (construing R.C. 2907.09(A)(1)); *State v. Fornshell,* 1st Dist. Hamilton No. C-180267, 2021-Ohio-674, ¶26.

{¶20} In the case at bar, Officer Watkins testified that the area where Plymale parked his truck was heavily travelled by motor vehicles, bicycles and pedestrians. T. at 71-72; 83; 84-85. Plymale's pickup truck was parked across the street from several houses. T. at 76-77. Plymale's vehicle was plainly visible to vehicles, pedestrians and bicyclists who passed by the area. T. at 78. The jury was given photographs of the area. T. at 77-80. Officer Watkins was clearly able to see Plymale's penis fully exposed cupped in his hand as Plymale rubbed it. T. at 73; 85; 87; 94. When asked, Plymale admitted that he was masturbating. T. at 80; 88-89; 110-111.

{¶21} Clearly, the likelihood of being viewed exists where the conduct was in fact viewed in this case by Officer Watkins.

{¶22} Plymale next contends that the state failed to prove that he was reckless. He argues that he sought out a secluded service road at the edge of a park and remained hidden inside the cab of his truck while he masturbated.

{¶23} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶24} The record before us contains ample circumstantial evidence on the issue of Plymale's recklessness. He parked his vehicle beside a heavily traveled public road in a public park. Officer Watkins was able to walk up to the truck and observe Plymale masturbating.

{¶25} The jury was free to weigh all of this evidence, discredit Plymale's explanations, and conclude that Plymale acted recklessly.

{¶26} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Plymale recklessly under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household, engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation.

{¶27} We hold, therefore, that the state met its burden of production regarding Plymale's public Indecency and, accordingly, there was sufficient evidence to support Plymale's conviction.

### Standard of Appellate Review – Manifest Weight.

{¶28} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶29} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶30} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶31} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574

N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶32} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw Officer Watkins and Plymale subject to cross-examination. The jury saw photographs of the surrounding area where Plymale parked his pickup truck. Thus, a rational basis exists in the record for the jury's decision.

{¶33} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Plymale conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Plymale's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Plymale of the charge.

{¶34} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Plymale was convicted.

{¶35} Plymale First and Second Assignments of Error are overruled.

{¶36} The judgment of the Delaware Municipal Court, Delaware County, Ohio is affirmed.


By Gwin, J.,

Baldwin, P.J., and

Hoffman, J., concur