[Cite as *State v. Jones*, 2025-Ohio-2928.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,
CITY OF RAVENNA,

Plaintiff-Appellee,

- vs -

GILES JONES,

Defendant-Appellant.

CASE NO. 2024-P-0082

Criminal Appeal from the
Municipal Court, Ravenna Division

Trial Court No. 2024 CRB 01711 R

---

## OPINION AND JUDGMENT ENTRY

Decided: August 18, 2025
Judgment: Affirmed in part, modified in part, affirmed as modified in part, reversed and remanded in part

---

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Adam M. Vanho*, 37 South Main Street, Suite 3, P.O. Box 157, Munroe Falls, OH 44262 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1}   Defendant-appellant, Giles Jones ("Jones"), appeals the decision of the Portage County Municipal Court, Ravenna Division, sentencing him to 90 days in jail, with 60 days suspended, and a $500 fine for public indecency. For the following reasons, we affirm the judgment of the Portage County Municipal Court in part, modify in part, affirm as modified in part, and reverse and remand in part.

{¶2}   This case arises from an incident occurring on October 4, 2024, when Jones exposed himself to a corrections officer, who had her back turned, and began

masturbating towards her. The officer did not see the act but was alerted to it by another officer who watched it happen. A complaint was filed in the Portage County Municipal Court, Ravenna Division, for public indecency, a violation of R.C. 2907.09(A)(1)(2), a second-degree misdemeanor. After a bench trial Jones was found guilty and sentenced to 90 days in jail with 60 days suspended, and a $500 fine plus court costs. Jones now contends that his conviction was against both the sufficiency and manifest weight of the evidence and that he was denied effective assistance of counsel.

{¶3}    After a careful review of the record, we conclude that the evidence admitted was sufficient to convict Jones of public indecency, a misdemeanor of the fourth-degree, but not a misdemeanor of the second-degree, and that Jones's conviction was not against the manifest weight of the evidence. We further determine that Jones was not denied effective assistance of counsel.

**Substantive and Procedural History**

{¶4}    Jones was an inmate at the Portage County Jail when the misconduct occurred. Corrections officer, Madison Neer ("Neer"), was conducting a security check to ensure inmates were accounted for. According to her testimony, Neer's back was turned to Jones, who was freely walking in the "dayroom." Neer explained that Jones was on 23-hour administrative lockdown and was allowed one hour out of his cell daily to "take a shower . . . wander the dayroom . . . use the phone, tablet, anything along those lines." Bench Trial Transcript, Dkt. 22, p. 8. It was during Jones's free time out of his cell that the incident occurred. Neer testified that Jones "came out into the middle of the dayroom and pulled down his pants and started masturbating." Bench Trial Transcript, Dkt. 22, p. 8. Neer did not see Jones masturbating in her direction. Neer testified that she had walked

up the stairs to the mezzanine, and that her back was facing Jones. Neer was talking to another inmate while Jones was masturbating towards her. Neer's partner, Deputy Vue, witnessed Jones misconduct on camera at the control desk. Deputy Vue came over the loudspeaker and ordered Jones to go into lockdown when he saw what was happening. Deputy Vue told Neer what happened. Neer's supervisors viewed the surveillance video and urged her to file a complaint. Neer filed her complaint against Jones on October 7, 2024.

{¶5}   A bench trial was held on December 5, 2024. Neer was the only witness who testified at the trial. Neer testified that when viewing the surveillance video before the trial it was the first time she saw Jones's conduct towards her. The video was played for the trial court and Neer identified herself and Jones in the footage. Neer indicated that when she walked out of the camera's view she was talking to another inmate on the mezzanine. The mezzanine, Neer explained, is the row of cells directly above where Jones was located when she interacted with him. The video then showed Jones walk to the center of the dayroom, pull down his pants, and begin to masturbate while looking in Neer's direction. The surveillance video was admitted as an exhibit, with no objection from defense counsel. The trial court found Jones guilty, and he was convicted of public indecency, a misdemeanor of the second-degree. Jones was then sentenced to 90 days in jail with 60 days suspended, a $500 fine and court costs.

**Assignments of Error**

{¶6}   On appeal, Jones asserts three assignments of error:

{¶7}   "[1.] Appellant's conviction for public indecency, in violation of section 2907.09(a)(1)92) [sic] of the Ohio Revised Code, is unconstitutional as it is based on

Case No. 2024-P-0082

insufficient evidence, in violation of the fifth and fourteenth amendments to the United States Constitution and article one, sections ten and sixteen of the Ohio Constitution."

{¶8} "[2.] Appellant's conviction for public indecency, in violation of section 2907.09(a)(1)92) [sic] of the Ohio Revised Code, is unconstitutional as it is against the manifest weight of the evidence, in violation of the fifth and fourteenth amendments to the United States."

{¶9} "[3.] Appellant was deprived of the effective assistance of counsel at trial, in violation of *Strickland v. Washington*, the sixth and fourteenth amendments of the United States Constitution, and article one, section ten of the Ohio Constitution."

**Manifest Weight and Sufficiency**

{¶10} Jones's first and second assignments of error assert that the trial court's conviction was based on insufficient evidence, and that the conviction was not supported by the manifest weight of the evidence. Sufficiency of the evidence and manifest weight are interrelated, yet distinguishable, and accordingly will be analyzed together.

{¶11} A reviewing court examines the evidence presented at trial to determine whether that evidence, if believed, would convince the jury of the defendant's guilt beyond a reasonable doubt. "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 23, quoting *Black's Law Dictionary* (6 Ed. 1990). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."

*State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Accordingly, we review the evidence presented at Jones's trial to determine if, in a light most favorable to the prosecution, the trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶12} When reviewing the manifest weight of the evidence, the appellate court considers the evidence in the record and whether the jury clearly lost its way. "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at ¶ 24. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). When the court of appeals reverses on a manifest weight of the evidence claim, they disagree with the jury such that the conviction must be reversed to correct a manifest miscarriage of justice.

{¶13} The statute governing public indecency is R.C. 2907.09, which states in relevant part:

> (A) No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:
>
> (1) Expose the person's private parts;
>
> (2) Engage in sexual conduct or masturbation. . .

{¶14} The Ohio Revised Code describes when someone acts recklessly: "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C). This Court has previously noted that the statute does not require the act to be seen by another. *See State v. Simon*, 2024-Ohio-4972, ¶ 30 (11th Dist.). *See also State v. Shannon*, 2021-Ohio-789, ¶ 32 (11th Dist.); *State v. Plymale*, 2021-Ohio-2918, ¶ 19 (5th Dist.) (sufficient evidence to meet reckless element found where defendant convicted of public indecency for masturbating in public park near heavily trafficked road across from residential homes, even though defendant sought a secluded part of the park and was only seen by the arresting officer); *State v. Johnson*, 42 Ohio App.3d 81, 84 (5th Dist., 1987) (defendant had no expectation of privacy when performing sexual acts in unlocked stall of outhouse in a public rest area, conviction of public indecency upheld). In other words, in the context of public decency, when a person

Case No. 2024-P-0082

disregards the strong likelihood of being seen, even if they are not seen, they have acted recklessly.

{¶15} The State concedes that Jones was incorrectly convicted of a second-degree misdemeanor. The State reasons that R.C. 2907.09(C)(2) explains that a violation of (A)(1) is a misdemeanor of the fourth-degree, unless it is the offender's second offense or the conduct is viewed by a minor.

{¶16} R.C. 2907.09 explains:

> (C)(1) Whoever violates this section is guilty of public indecency and shall be punished as provided in divisions (C)(2), (3), (4), and (5) of this section.
>
> (C)(2) Except as otherwise provided in division (C)(2) of this section, a violation of division (A)(1) of this section is a misdemeanor of the [fourth-degree]. If the offender previously has been convicted of or pleaded guilty to one violation of this section, a violation of division (A)(1) of this section is a misdemeanor of the [third-degree] or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a misdemeanor of the [second-degree] . . . .

{¶17} We therefore conclude that there was sufficient evidence to convict Jones of a fourth-degree misdemeanor, but not a second-degree misdemeanor. The appellate court has authority to modify a verdict in sentences such as this one. Ohio courts have determined that, "[w]hen the evidence shows a defendant was not guilty of the crime for which he was convicted, but was guilty of a lesser degree of that crime, an appellate court can modify the verdict accordingly, and remand the case for resentencing. *State v. Downs*, 2017-Ohio-1014, ¶ 30 (7th Dist.), citing *State v. Kozic*, 2014-Ohio-3788, ¶ 53 (7th Dist.). *See also State v. Hudson*, 2018-Ohio-423, ¶ 35 (2nd Dist.).

{¶18} There was sufficient evidence to convict Jones of a fourth-degree misdemeanor for the offense of public indecency. The evidence presented, however, did

Case No. 2024-P-0082

not support a conviction for public indecency as a second-degree misdemeanor. There was no evidence that was presented to show Jones had a prior conviction for public indecency, nor that Jones committed the act in potential view of a minor. Due to the lack of evidence indicating that this was Jones's second offense or that minors could be present, the trial court could only convict Jones of a fourth-degree misdemeanor for public indecency.

{¶19} As to Jones's assertion that his conviction is against the manifest weight of the evidence, we disagree. Neer testified that she started her day doing a head count and that she noted Jones was out of his cell. Jones asked Neer to open a cleaning closet. Neer declined. Neer testified that there were problems in the past when officers had let Jones in the cleaning closet. Neer walked away from Jones to continue her head count and proceeded to the mezzanine. Neer was talking to another inmate when Jones walked to the middle of the dayroom, pulled his pants down, and started masturbating towards her. Neer did not see Jones masturbating towards her, though she testified that she reviewed the surveillance video that captured Jones in the act after her partner made her aware of it. The video surveillance footage was played at the bench trial. The footage showed Neer enter the common area, speak briefly with Jones, and then exit the view of the camera as she proceeded to the mezzanine. When Neer was out of sight of the camera, but in view of Jones, Jones proceeded to pull his pants down and proceeded to masturbate. Neer testified that the dayroom is a common space where others were likely to be present as the area was frequently used by officers and other inmates. Neer testified that had she turned around, she would have been able to see Jones masturbating in the

middle of the dayroom. Neer said she felt threatened by Jones's conduct because he was out of his cell and in a common area.

{¶20} While Neer did not see Jones masturbating, the statute merely requires that it is likely that the defendant will be seen. *See Simon*, 2024-Ohio-4972, ¶ 32 (11th Dist.). *See also In re W.S.*, 2009-Ohio-5427, ¶ 40 (11th Dist.) (defendant's conduct masturbating in the open area of a public restroom was likely to be viewed by and affront others and conviction for public indecency was not against the manifest weight of the evidence). Here, Jones was seen by Neer's partner and was captured on video. Neer testified that if she had turned around, she too would have seen Jones. Jones was not masturbating in his cell, where he was in isolation for 23 hours a day, but during the single hour he had out of his cell to roam the common area. Jones acted without regard to the consequences or the risk of being seen when he entered the dayroom, pulled his pants down, and began masturbating in the direction of Neer.

{¶21} Sufficient evidence was presented to find Jones guilty of public indecency, as a fourth-degree misdemeanor, and the conviction was not against the manifest weight of the evidence. As such, Jones's first two assignments of error have merit, to the extent that there was not sufficient evidence to support a conviction for a second-degree misdemeanor. However, there was sufficient evidence to support a fourth-degree misdemeanor, and a conviction for a fourth-degree misdemeanor was not against the manifest weight of the evidence.

**Ineffective Assistance of Counsel**

{¶22} There are two components required to demonstrate ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient."

Case No. 2024-P-0082

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* To prevail on a claim of ineffective assistance of counsel, appellant must show both deficient performance of counsel, and that the deficient performance prejudiced the defense such that it warrants a reversal.

{¶23} Jones contends in his brief that defense counsel's performance was deficient for failing to object to the improper admission of jailhouse video of Jones masturbating, or to Neer's testimony because she did not witness Jones masturbating. In Ohio, there is a strong presumption that licensed attorneys are competent and that their actions are premised in a sound strategy. *State v. Shirley*, 2006-Ohio-256, ¶ 13 (9th Dist.), citing *State v. Jones*, 2005-Ohio-5502, ¶ 18 (9th Dist.). *See also State v. Nitso*, 2024-Ohio-790, ¶ 28 (11th Dist.), citing *State v. Bates*, WL 314855 (11th Dist. March 30, 2001). Failing to object to admissible evidence does not constitute ineffective assistance of counsel. *State v. O.E.P.-T.*, 2023-Ohio-2035, ¶ 157, (10th Dist.). In other words, defense counsel is not required to raise a meritless issue. *Id.*, citing *State v. Issa*, 93 Ohio St.3d 49, 68 (2001).

{¶24} Deputy Vue did not testify, and Neer did not witness Jones masturbating because her back was turned to him. Video surveillance footage from the jail admitted at trial was the only evidence of Jones's misconduct that was presented. Accordingly, Jones's ineffective assistance of counsel claim rests on whether the jail surveillance video was properly admitted.

**Admission of the Jail Surveillance Video**

{¶25} There is a low threshold to admit surveillance video. Evid.R. 901(A) states that: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." """This low threshold standard does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims to be.""" *State v. Glavic*, 2024-Ohio-209, ¶ 47 (11th Dist.), quoting *State v. Miller*, 2015-Ohio-956, ¶ 21 (11th Dist.). "Evid.R. 901(B)(1) provides, by way of illustration, that testimony from a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence. The proponent of the evidence need only demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id.* at 48, quoting *State v. Jasiewicz*, 2013-Ohio-4552, ¶ 14 (11th Dist.), citing *State v. Bell*, 2009-Ohio-2335, ¶ 30 (12th Dist.). In essence, to establish the admissibility of the jail surveillance video, the State was required to demonstrate the reasonable likelihood that the video evidence was authentic.

{¶26} Video evidence can be admitted under two theories: the pictorial-testimony theory, or the silent-witness theory. "Photographic evidence, including videotapes, can be admitted under two theories. Under the pictorial-testimony theory, evidence is admissible 'when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on the witness' personal observation.'" *State v. Rosemond*, 2019-Ohio-5356, ¶ 58 (1st Dist.), citing *Midland Steel Prod. Co. v. U.A.W. Local 486*, 691 Ohio St.3d 121, 129-130 (1991) and *State v. Hoffmeyer*, 2014-Ohio-3578, ¶ 19 (9th Dist.). "Under the silent-witness theory, photographic evidence is a 'silent witness,' which 'speaks for itself, and is substantive evidence of what it portrays independent of a

Case No. 2024-P-0082

sponsoring witness." *Id.* "Under that theory, evidence is admissible 'upon a sufficient showing of the reliability of the process or system that produced the evidence.'" *Id.* "'The "[silent-witness]" theory is applicable when the photographic evidence speaks for itself and is substantive evidence of what it portrays.'" *State v. Ice*, 2005-Ohio-1330, ¶ 20 (7th Dist.), quoting *Midland Steel Prod.* at 130. "'Under the [silent-witness] theory, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence.' *Id.* Expert witness testimony, however, is not required to demonstrate reliability." *Id.* Further, "surveillance video is liberally admitted as a '[silent-witness]' with sponsoring testimony." *State v. Anderson*, 2014-Ohio-1831, ¶ 13, (8th Dist.) quoting *State v. Green*, 2014-Ohio-648, ¶ 12 (7th Dist.). The State was required to either authenticate the surveillance video through testimony of a witness who viewed Jones's conduct, or by establishing the reliability and accuracy of the video.

{¶27} The State failed to show that the evidence was admissible pursuant to the pictorial-testimony theory, as there were no witnesses who testified to seeing the misconduct. *See State v. Spencer*, 2019-Ohio-3800, ¶ 15 (4th Dist.) (State failed to establish admissibility of evidence under pictorial-testimony theory because no witnesses testified that they saw the defendant's misconduct and that the footage was a fair and accurate representation of what occurred). "Under the [pictorial-evidence] theory, "'the photographic evidence is merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.'"" *Id.*, quoting *Midland Steel Prod.* at 129. Conversely, under the silent-witness theory, it is not required that a witness viewed the defendant's misconduct to testify to the authenticity of

the video footage. "Pursuant to the [silent-witness] theory, "'the photographic evidence is a 'silent witness' which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness.''" *Id.* at ¶ 16, quoting *Midland Steel Prod.* at paragraph three of the syllabus. In other words, once a testifying witness authenticates the video, the video in essence speaks for itself to the defendant's misconduct.

{¶28} Like photographs, a video "is admissible if it is shown to be an accurate representation of what it purports to represent." *State Farm Mut. Auto. Ins. Co. v. Anders*, 2012-Ohio-824, ¶ 30 (10th Dist.), citing *State v. Hanna*, 54 Ohio St.2d 84, 88 (1978). "It is unnecessary to show who took the photograph or when it was taken, provided that there is testimony that the photograph is a fair and accurate representation of what it represents." *Id.*, citing *State v. Farrah*, 2002-Ohio-1918, ¶ 39 (10th Dist.).

{¶29} Neer testified to the accuracy of the jail surveillance video. Neer identified herself and the defendant in the video. Neer testified that the video was an accurate representation of the jail and what she did on the day of the incident, and that she had viewed the video before trial. Because Neer testified that the video accurately depicted known features of the jail, the defendant, and herself on the day of the incident, then the video also depicted Jones's conduct accurately. *Midland Steel Prod.* at 130. Neer's testimony, therefore, was enough to meet the low threshold required for authentication and sufficiently demonstrate that the video was likely what it was purported to be.

{¶30} As the video surveillance evidence was properly admitted under the silent-witness theory, Jones failed to demonstrate that there was a failure on behalf of defense counsel that prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Jones's third assignment of error is without merit.

Case No. 2024-P-0082

**Conclusion**

{¶31} Jones's first assignment of error has merit, to the extent that Jones's conviction for public indecency, a second-degree misdemeanor, and was not supported by sufficient evidence. However, a conviction for a fourth-degree misdemeanor was supported by sufficient evidence and not against the manifest weight of the evidence. As Jones's conviction was not against the manifest weight of the evidence, his second assignment of error is without merit. Further Jones's was not deprived of effective assistance of counsel at trial, therefore his third assignment of error is also without merit. As such, the judgment of the Portage County Municipal Court, Ravenna Division, must be remanded and modified to reflect Jones's conviction for public indecency, a misdemeanor of the fourth-degree, and for sentencing in accordance with his conviction.

{¶32} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed in part, modified and affirmed as modified in part, and reversed and remanded for sentencing in accordance with the modified conviction.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-P-0082

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is hereby affirmed in part, modified and affirmed as modified in part, and reversed in part. This case is remanded in part for further proceedings consistent with the opinion.

Costs to be taxed against the parties equally.

_____
PRESIDING JUDGE ROBERT J. PATTON


_____
JUDGE JOHN J. EKLUND,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-P-0082