[Cite as *State v. Breeden*, 2023-Ohio-1872.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220325 |
| | | TRIAL NO. 22CRB-2482 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| MANDEL BREEDEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 7, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Susan M. Zurface*, Assistant Prosecuting Attorney, for Plaintiff-Appellee City of Cincinnati,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}    Mandel Breeden appeals his conviction, after a bench trial, for public indecency.   In one assignment of error, Breeden argues that his conviction is not supported by sufficient evidence and is contrary to the manifest weight of the evidence.   For the reasons that follow, we affirm the judgment of the trial court.

## Background

{¶2}    Mandel Breeden was charged with public indecency for engaging in sexual conduct in Mt. Airy Forest.   After Breeden pled not guilty, the case proceeded to a bench trial.   Nathaniel Young, a police specialist in the Cincinnati Police Department's Vice Squad, testified that he was working undercover and investigating complaints of sexually deviant behavior in Mt. Airy Park.

{¶3}    On December 3, 2021, Young was observing the area around Oak Ridge Lodge at 9:30 a.m.  He observed a man, later identified as Douglas Witt, masturbating and exposing himself near the lodge.   Young watched as Witt walked down a set of stairs behind the lodge next to a veranda and enter the woods.   Witt went past a sign that said, "Do Not Enter This Area.  This is a [sic] Open Area for Hunting."

{¶4}    Young began walking toward the parking lot to update the surveillance team.   As he was returning to the team, Mandel Breeden walked past him.   Young noted that Breeden appeared to be "walk[ing] with a purpose" past the veranda, down the steps, and onto the same trail that Witt had taken.   Young began to follow him. When he got to the rock wall where the veranda starts, he could see Witt standing at a picnic table without his pants and with an erect penis.   Although the picnic table was approximately ten yards inside the wood-line, Young could see him clearly because the trees had no leaves.

**{¶5}** Young followed Breeden down the path toward the picnic table and observed Breeden approach Witt. Breeden removed his erect penis from his pants and engaged in anal intercourse with Witt. At this time, Young was approximately two feet from them. Young recorded the incident on his cell phone, and the state admitted the recording into evidence. The recording did not reflect all of his observations as he was walking around the park because his cell phone was in his pocket.

**{¶6}** Young testified that the area where the conduct occurred was used by hunters, hikers, people walking around the lodge, people in the immediate parking lot, and park employees. At the time, there were multiple cars in the parking lot and several people walking in the area. Young further testified that anyone on the veranda would be able to see the men because the veranda was elevated and overlooked the picnic table.

**{¶7}** Young informed Mary Warner, a second officer on the Vice Squad, of his observations. Warner testified that she ran the license plate number of the car that Breeden had driven to the park. When she identified his name, she obtained his photo through Facebook, and Young identified him. Later, Warner contacted Breeden by phone and asked him to come to the police station. When he arrived, Warner served him a citation.

**{¶8}** After Warner's testimony, the trial court found Breeden guilty.

**{¶9}** Breeden now appeals, and in one assignment of error, he contends that his conviction for public indecency was not supported by sufficient evidence and ran contrary to the manifest weight of the evidence. In particular, Breeden argues that his conduct was not likely to be viewed by others.

### Law and Analysis

**{¶10}** In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶11}** When considering a weight-of-the-evidence claim, we review " 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Bailey* at ¶ 63.

**{¶12}** R.C. 2907.09(A)(2) provides that no person shall recklessly engage in sexual conduct "under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household." Thus, the state was required to prove that Breeden "(1) acted recklessly; (2) exposed his private parts; (3) under circumstances likely to be viewed by others; (4) likely to affront others; and (5) in his physical proximity." *State v. Imboden*, 4th Dist. Ross No. 21CA3752, 2022-Ohio-4580, ¶ 26.

4

The relevant inquiry is whether an offender's conduct would likely have been viewed by others. *See State v. Fornshell*, 1st Dist. Hamilton No. C-180267, 2021-Ohio-674, ¶ 26. It is immaterial whether others actually viewed the conduct. *See id.*

**{¶13}** Breeden argues that his conduct was not committed under circumstances likely to be viewed by others because the area was secluded and restricted to hunters.

**{¶14}** Reviewing the evidence adduced at trial, the testimony reveals that Young had an unobstructed view from the veranda of Witt standing at a picnic table without his pants on and with an erect penis. Later, Breeden engaged in sexual conduct at the same picnic table. Additionally, Young testified that the conduct could be viewed by hikers or hunters near the wooded area and anyone on the veranda. Therefore, construing the evidence in a light most favorable to the state, any rational trier of fact could have found that Breeden's conduct was likely to be viewed by others.

**{¶15}** Breeden further argues that Young's testimony that the picnic table was visible from the veranda should be discounted because the video showed a significant amount of foliage blocking the view. Young's recording shows the rock wall at the start of the veranda. However, the recording does not depict his visual observations due to the location of the camera in his pocket. The factfinder was free to conclude that Young's testimony was credible. Based on this record, the factfinder did not clearly lose its way and create a manifest miscarriage of justice.

**{¶16}** Accordingly, we overrule the assignment of error.

### Conclusion

**{¶17}** Having overruled the sole assignment of error, we affirm the trial court's judgment.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.