[Cite as *State v. Briers*, 2025-Ohio-5727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250267 |
| | | TRIAL NO. 25/CRB/1923 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| JASON BRIERS, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 12/23/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Briers*, 2025-Ohio-5727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250267 |
| | | TRIAL NO. | 25/CRB/1923 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| JASON BRIERS, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 23, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Brandon Yang,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Jason Briers appeals from his conviction for public indecency. In one assignment of error, Briers contends that the evidence was insufficient to support the conviction, and his conviction was against the weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

## Factual Background

{¶2} Jason Briers was charged with public indecency after a police officer witnessed him urinating in public. Briers proceeded to a bench trial.

{¶3} The Cincinnati police officer who charged him was the sole witness at trial. The officer testified that he was assigned to the Neighborhood Unit and was driving on Elm Street in a marked police vehicle at 5:30 in the evening while it was still daylight. Elm Street is a one-way street with parking lanes on both sides of the road. As he was driving northbound just before Liberty Street, he looked to his right and saw Briers on the sidewalk, with his penis fully exposed, urinating on a tree. No cars were parked where Briers was standing, so the officer had a clear view of Briers. Briers was approximately ten feet away when the officer first observed him.

{¶4} The officer reversed the cruiser, backed over to the curb, and parked. He approached Briers and told him that he could not have his penis exposed. No one else was present during the officer's interaction with Briers. Briers was urinating on a tree that was next to a bus stop. Briers explained that he had a bladder problem, and that he had been waiting for a bus. The officer testified that an exposed penis in broad daylight on a public street would affront people.

{¶5} At the close of the evidence, Briers moved for a judgment of acquittal. The parties agreed that the public indecency was a fourth-degree misdemeanor because the State did not prove that Briers had a prior public-indecency conviction.

Relying on *City of Cleveland v. Pugh*, 110 Ohio App.3d 472 (8th Dist. 1996), Briers further argued that the legislative comment to the public-indecency statute demonstrated that the General Assembly did not intend for public urination to be charged as a violation of the public-indecency statute. In relevant part, the 1974 committee comment states that,

> The gist of this section is to prohibit sexual exposures or actual or simulated sexual displays, when done under circumstances in which such exposures or displays are likely to be seen by and offend persons not members of the offender's household.

> Nudist camps would not be prohibited under this section if the inmates take reasonable precautions to insure their privacy, since their lack of clothing is not likely to offend each other. Answering an urgent call of nature alfresco would not be an offense if the actor takes reasonable precautions against discovery, although if he or she is imprudent in choosing a site the act might constitute disorderly conduct under new section 2917.11(A)(5)[1].

{¶6} The trial court found that *Pugh* dealt with a former version of the public-indecency statute, in which public indecency or all forms of public indecency were characterized as sex offenses and the current statute does not classify public urination as a sexually-oriented offense. Relying on *State v. McCall*, 2010-Ohio-4283 (9th Dist.), the court further found that "answering an urgent call of nature alfresco would not be an offense if the actor took precautions to prevent discovery." The court found

---

[1] Former R.C. 2917.11(A)(5) stated, "No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following: (5) Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender."

Briers guilty because the sole evidence that Briers had a medical issue was his "self-serving statement to the police officer," and he took no precautions "to avoid exposing himself to anyone who happened to be on a busy city street." While driving a cruiser, the officer was able to view Briers urinating from ten feet away, and others who may have been walking or driving in the vicinity would have been able to observe Briers.

{¶7} Briers now appeals, and in one assignment of error, he contends that the conviction was based on insufficient evidence and was against the weight of the evidence.

### Sufficiency and Manifest Weight

{¶8} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.* "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶10} Briers was convicted of public indecency in violation of R.C. 2907.09(A)(1), which states, "No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the

person's household: (1) Expose the person's private parts."

{¶11} Briers first contends that the State failed to prove that anyone was affronted by his exposed penis, and that the State failed to prove the "likely to be viewed and affront others" element because the officer did not testify that "Briers' exposed penis was likely to be viewed and affront others." However, likely to be viewed by and affront others means "that the possibility of being discovered by others exist, not that others actually witnessed the exposure." *City of Cleveland v. Carson*, 1995 Ohio App. LEXIS 2846, *4 (8th Dist. July 6, 1995). "It is immaterial whether others actually viewed the conduct." *State v. Breedon*, 2023-Ohio-1872, ¶ 12 (1st Dist.).

{¶12} "[W]hether an offender's conduct is actually viewed by others is immaterial to the analysis under R.C. 2907.09. It matters not whether others actually viewed the conduct but rather whether such conduct would likely have been viewed by others." (Internal citations omitted.) *State v. Plymale*, 2021-Ohio-2918, ¶ 19 (5th Dist.); *State v. Ramey*, 2012-Ohio-1015, ¶ 16 (10th Dist.); *State v. Fornshell*, 2021-Ohio-674, ¶ 26 (1st Dist.) ("A conviction for public indecency does not necessitate a showing that an actual person witnessed the event."); *State v. Henry*, 2002-Ohio-7180, ¶ 70 (7th Dist.) ("[T]he state was not required to prove anyone was actually offended by [defendant's] conduct. The state was simply required to prove [defendant's] conduct was likely to be viewed by and affront others.").

{¶13} The evidence demonstrated that the officer had an unobstructed view of Briers's penis from a distance of ten feet while driving down the street. The officer saw Briers standing on the sidewalk, urinating on a tree. Briers was standing next to a bus stop, on a public street in broad daylight. The officer testified that no cars were parked on the street where Briers stood, and he had a clear view while driving. "Clearly, the likelihood of being viewed exists where the conduct was in fact viewed . . . ." *Ramey*

6

at ¶ 17. The factfinder "was free to conclude that the sensitivities of the ordinary observer would likely be affronted upon viewing [Briers's] conduct." *Id.* at ¶ 23. Viewing the evidence in a light most favorable to the State, any rational trier of fact could have found that Briers's conduct was likely to be viewed by and affront others.

{¶14} Next, Briers argues that the State failed to prove his conduct was reckless. R.C. 2901.22(C) provides,

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶15} "Recklessness therefore requires an individual to recognize the risk and proceed with a perverse disregard for it." *Ramey* at ¶ 26, citing *State v. Covington*, 107 Ohio App.3d 203, 206 (1st Dist. 1995). "Recklessness," may be proved through circumstantial evidence. *See State v. Jones*, 2012-Ohio-4256, ¶ 6 (9th Dist.), citing *State v. Hatfield*, 2009-Ohio-353, ¶ 19-24.

{¶16} The record before us contains ample circumstantial evidence on the issue of Briers's recklessness. As previously discussed, Briers's exposed his penis while standing on a public sidewalk on a public roadway next to a bus stop in broad daylight. Briers chose a location on the sidewalk where his view was unobstructed by any parked cars. Briers's conduct could be viewed by anyone walking on the sidewalk or driving down the road or waiting for the bus. Due to the public and open location that he chose to expose his penis, the State has shown sufficient requisite recklessness and also has shown the likelihood of Briers's conduct being viewed by and affronting

others.

**{¶17}** The evidence presented by the State, if believed, demonstrates that the officer observed Briers urinating on a tree, which constituted a reckless exposure of his private parts that would likely be viewed by and affront others.

**{¶18}** Finally, Briers contends that his conviction should be reversed and dismissed or reversed and remanded for a new trial because the legislative comment to the public-indecency statute demonstrates that the General Assembly did not intend for public urination to be charged as a violation of public indecency. Briers relies on the Eighth District's holding in *Pugh*, 110 Ohio App.3d 472, that,

> The legislative comment to R.C. 2907.09 creates an exception to public indecency for a person who exposes his or her private parts when done for the purpose of "answering an urgent call of nature." However, if a person is imprudent in choosing a site, at most, the act "might" constitute disorderly conduct. The offense of public indecency was clearly enacted to punish "sexual exposures," not to punish a person for answering an urgent call of nature. Construing the offense of public indecency strictly against the City and liberally in favor of Pugh, we find as a matter of law that merely "answering an urgent call of nature alfresco" by urinating in public does not constitute public indecency and is not a violation of Cleveland Codified Ordinances, Section 619.07.

*Id.* at 474-475.

**{¶19}** However, other courts have rejected *Pugh*'s holding. The Tenth District rejected the *Pugh* analysis in *Columbus v. Breer*, 2003-Ohio-2479 (10th Dist.), and held,

> [W]e find as a matter of law that urinating in public may

8

constitute public indecency and may be a violation of C.C. Section 2307.09. The statute is unambiguous and definite in language. The legislative intent of the statute prohibits the reckless exposure of private parts in which the conduct would likely be viewed by and affront others. Appellee was observed holding his penis in his right hand and urinating outdoors within 10-20 feet of police officers and citizens. Appellee took no reasonable precautions against discovery or to assure privacy.

*Id*. at ¶ 13.

**{¶20}** The Ninth District noted that after *Pugh* was decided, the Ohio Supreme Court held that courts are "bound by the language of criminal provisions, not unofficial Legislative Service Commission Notes." *State v. McCall*, 2010-Ohio-4283, ¶ 21 (9th Dist.), quoting *State v. Merriweather*, 64 Ohio St.2d 57, 59 (1980). When reviewing the statute, the *McCall* court determined that "the plain language of the statute requires only reckless exposure of one's private parts under circumstances where the conduct is likely to be viewed as an affront by others." *Id*. at ¶ 22. The court further held that the legislative comment conflicts with the plain language of the statute, and that "this problem begs a legislative solution." *Id*.

**{¶21}** Moreover, this case is distinguishable from *Pugh*. After Pugh had surgery on his penis in 1965, he had a urinary problem and difficulties with bladder control. *Pugh*, 110 Ohio App.3d at 473-474. "Pugh admitted he was urinating in a public place, but maintained he had to go and could not wait until he got up to his apartment." *Id*. at 474.

**{¶22}** In this case, Briers did not testify, and the trial court found that the only evidence of Briers's medical issue was his "self-serving statement to the police officer." There was no evidence that Briers's alleged medical issue prevented him from

controlling his bladder. The court further found that "there's no evidence to even suggest that he took any steps, whatsoever, to conceal himself or prevent discovery of this call of nature behavior."

{¶23} Viewing the evidence in the light most favorable to the State, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt. Based on this record, the factfinder did not clearly lose its way and create a manifest miscarriage of justice.

{¶24} Accordingly, we overrule Briers's assignment of error.

## Conclusion

{¶25} Having overruled Briers's sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BOCK** and **NESTOR, JJ.,** concur.