[Cite as *State v. Maley*, 2026-Ohio-1540.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :          APPEAL NO.    C-250353
                                             TRIAL NO.     25/CRB/5258

    Plaintiff-Appellee,          :

  vs.                              :

THURMELL MALEY,                   :          *JUDGMENT ENTRY*

    Defendant-Appellant.         :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 4/29/2026 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *State v. Maley*, 2026-Ohio-1540.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250353 |
| | | TRIAL NO. | 25/CRB/5258 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| THURMELL MALEY, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: April 29, 2026

*Emily Smart Woerner*, City Solicitor, *Susan Zurface,* Chief Prosecuting Attorney, and *Erik W. Laursen,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}    Thurmell Maley appeals her conviction, after a bench trial, for public indecency.  In two assignments of error, Maley contends that the conviction was based on insufficient evidence and contrary to the weight of the evidence, and that the court erred in finding her guilty of a third-degree misdemeanor where the evidence failed to establish any of the circumstances in R.C. 2907.09(C)(2) to raise the offense above a fourth-degree misdemeanor.  For the following reasons, we affirm the judgment of the trial court and remand the cause for the trial court to issue a nunc pro tunc entry to correct the clerical error to reflect the conviction was a fourth-degree misdemeanor.

## Factual Background

{¶2}    Thurmell Maley was charged with public indecency after a police officer witnessed her urinating in public.  Maley proceeded to a bench trial.

{¶3}    At the trial, the State's sole witness was a Cincinnati police officer.  The officer testified that he came into contact with Maley at the intersection of Reading Road and Dana Avenue.  As he was driving down Reading Road at 6:00 p.m., he saw Maley with her pants and underwear pulled down, fully exposed, urinating in front of someone.  The officer could see her squatting down, with her pants and underwear completely down, actively urinating.  He was able to see the side of her buttocks.  The officer testified that he could not see her vagina, but he could "actively see her urinate, and it has to come from somewhere."

{¶4}    The officer did a double-take, turned his vehicle around, and was able to capture a snapshot of her with his body-worn camera ("BWC").  His BWC video was played.  By the time he parked and approached her, Maley had finished and was fully clothed.  Maley presented her I.D. and explained that she was 55 years old, and she could not "hold it" while waiting for the bus.  The officer smelled an odor of alcohol,

3

and Maley confirmed that she had been drinking. He believed that the consumption of alcohol played a factor in the urge to urinate.

{¶5} Maley urinated next to a bus stop and a sidewalk near some businesses and apartment complexes. The officer testified that it was one of the most crowded areas in District 4 with heavy pedestrian and vehicle traffic. The officer did not speak with the woman standing at the bus stop. Nothing prevented anyone else in the area from viewing her. Maley was in full view of anyone walking or driving.

{¶6} The entire encounter lasted about five minutes. As the officer was writing her a citation, the bus pulled up, and he did not want her to miss the bus. The officer wrote down the information about the court date for her so she did not have to miss her bus.

{¶7} Maley testified that she had worked the third shift at the Red's game the previous night. That afternoon, at 3:00 p.m., she went to pick up and cash her check. As she was waiting for a bus, she went to the store next to the bus stop and had some drinks with a few friends.

{¶8} Maley waited for the bus for 40 minutes. It began to rain, and Maley had to urinate. A woman at the bus stop said she would watch her bag if Maley wanted to urinate in the bushes. Maley left her bag and began to run toward the bushes. However, she fell and urinated where she fell instead of in the bushes. At that time, the officer started screaming from across the street for her to stop urinating, but she was "already in position" and "already going."

{¶9} The police cruiser made a U-turn, and Maley noticed that the bus was coming. One officer was mean and accused her of being drunk. The officer who wrote the ticket was nicer and said he would finish in three minutes, so she asked the bus driver if he would wait, and he agreed. Maley testified that a storm was coming and

no one was around when she decided to urinate. Plus, her stomach concealed her private area, so no one could see anything.

{¶10} On cross-examination, Maley testified that she had purchased little bottles of liquor and a couple of beers at a store. Maley went to a tire shop where she knew the employees, and drank a bottle of vodka and a Pink Lady. Maley insisted that she was not drunk, she just had to urinate.

{¶11} The trial court found her guilty after finding that Maley publicly exposed her genitals when she dropped her pants and urinated at a bus stop at one of the busiest intersections in that area. The video depicted several cars passing by as she was urinating, which comports with the legal standard that her conduct was likely to be viewed by and affront others. Maley could have shielded herself from the public by entering the bushes or the business right behind her.

### Sufficiency and Manifest Weight of the Evidence

{¶12} Maley first contends that her conviction was based on insufficient evidence and was against the weight of the evidence.

{¶13} A challenge to the sufficiency of the evidence questions whether the State presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *See State v. Thompson*, 2025-Ohio-4359, ¶ 107 (1st Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). "[T]he question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt." *State v. Ham*, 2017-Ohio-9189, ¶ 19 (1st Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), paragraph two of the syllabus.

{¶14} In contrast, when challenging the weight of the evidence, the issue is whether the factfinder created a manifest miscarriage of justice in resolving conflicting

evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). The reviewing court must be mindful that credibility generally is an issue for the trier of fact to resolve. *State v. Glover*, 2019-Ohio-5211, ¶ 30 (1st Dist.), citing *State v. Issa*, 93 Ohio St.3d 49, 67 (2002). The trial court's credibility determinations are entitled to substantial deference "because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses." (Internal citations omitted.) *Id.*

{¶15} Maley was convicted of public indecency in violation of R.C. 2907.09(A)(1), which requires the State to prove that Maley (1) recklessly (2) exposed her private parts (3) under circumstances in which her conduct was (a) likely to be viewed by others and (b) likely to affront others (4) not members of her household. *See In re W.S.*, 2009-Ohio-5427, ¶ 35 (11th Dist.), citing *Columbus v. Abdalla*, 1998 Ohio App. LEXIS 1861, *10 (10th Dist. Apr. 30, 1998).

{¶16} R.C. 2907.01(R), which applies to sections 2907.01 through 2907.38, defines "private area" as "the genitals, pubic area, buttocks, or female breast below the top of the areola, where nude or covered by an undergarment."

{¶17} Maley first contends that the State failed to prove that her private parts were viewed or likely to be viewed by others when her stomach and shirt shielded her private areas. Maley does not dispute that she exposed her private areas, rather, she argues that only her buttocks were publicly visible "and not her genitalia." She further contends that "someone would have to be underneath [her] on the sidewalk to be able to observe her genitalia."

{¶18} Buttocks are included in the definition of "private area," and the officer testified, and Maley concedes, that he observed the side of her buttocks. Moreover,

6

case law confirms that viewing the buttocks is sufficient to prove the exposure of "private parts." *See In re W.S.*, 2009-Ohio-5427, at ¶ 38 (11th Dist.), quoting *State v. Butler*, 1975 Ohio App. LEXIS 7269, *4 (1st Dist. Sep. 8, 1975) (where the witnesses saw Butler's backside, "the inference of Butler's having exposed his 'private parts' was sufficient to prove his guilt beyond a reasonable doubt"); *In re Janoch*, 1989 Ohio App. LEXIS 82, *4 (11th Dist. Jan. 13, 1989) (the common usage and understanding of "private parts" includes the buttocks); *State v. Mackie*, 2011-Ohio-2102, ¶ 20 (12th Dist.), quoting *Commonwealth v. Arthur*, 420 Mass. 535, 537 (1995) ("defendant could not be convicted of indecent exposure when witnesses only saw defendant's pubic hair and not his "genitalia or buttocks").

{¶19} Under the statute, the State is not required to prove that anyone actually saw the conduct, as long as the conduct was likely to be viewed by others. *See State v. Briers*, 2025-Ohio-5727, ¶ 12 (1st Dist.) (the analysis is whether such conduct was likely to be viewed and not whether the conduct is actually viewed); *State v. Fornshell*, 2021-Ohio-674, ¶ 26 (1st Dist.) (A public indecency conviction "does not necessitate a showing that an actual person witnessed the event."); *State v. Henry*, 2002-Ohio-7180, ¶ 70 (7th Dist.) (The state was simply required to prove that defendant's conduct was likely to be viewed by others.).

{¶20} Relying on *City of Cleveland v. Pugh*, 110 Ohio App.3d 472 (8th Dist. 1996), Maley also argues that answering the call of nature does not constitute publicly indecency. *See id.* at 474-475. In *Pugh*, the court interpreted the legislative comment which states, "[a]nswering an urgent call of nature alfresco would not be an offense if the actor takes reasonable precautions against discovery, as creating an exception to public indecency for public urination." As this court recently discussed, this analysis has been rejected by other courts. *See Briers* at ¶ 19-20, citing *Columbus v. Breer*,

7

2003-Ohio-2479, ¶ 13 (10th Dist.) ("[W]e find as a matter of law that urinating in public may constitute public indecency and may be a violation of R.C. Section 2307.09. The statute is unambiguous and definite in language."); *State v. McCall*, 2010-Ohio-4283, ¶ 21 (9th Dist.) (noting that after *Pugh* was decided, the Ohio Supreme Court held that courts are "bound by the language of criminal provisions, not unofficial Legislative Service Commission Notes."). Urinating in public may constitute public indecency, and we find no merit to Maley's argument.

**{¶21}** Here, the officer testified that he saw Maley with her pants and underwear pulled down, fully exposed, while urinating. The conduct occurred at a bus stop in a location with heavy pedestrian and vehicle traffic. The video showed several cars driving past her while she was urinating. The officer was able to view the conduct while driving down the road.

**{¶22}** Viewing the evidence in a light most favorable to the State, any rational trier of fact could have found that Maley exposed her private parts in a manner that her conduct was likely to be viewed by and affront others. Based on this record, the factfinder did not clearly lose its way and create a manifest miscarriage of justice.

**{¶23}** We overrule the first assignment of error.

### Degree of Offense

**{¶24}** In her second assignment of error, Maley argues that the trial court erred in finding her guilty of a third-degree misdemeanor where the evidence failed to establish any circumstances described in R.C. 2907.09(C)(2) to raise the offense above a fourth-degree misdemeanor. Under R.C. 2907.09(C)(2), "a violation of division (A)(1) of this section is a misdemeanor of the fourth degree. If the offender previously has been convicted of or pleaded guilty to one violation of this section, a violation of division (A)(1) of this section is a misdemeanor of the third degree."

8

**{¶25}** The record reflects that Maley was charged with a fourth-degree misdemeanor, and the State did not allege or attempt to prove she had a prior conviction, to raise the offense to a third-degree misdemeanor. In finding Maley guilty, the trial court noted that she had no prior convictions for public indecency. However, the judge's sheets reflect that Maley was charged with and convicted of a third-degree misdemeanor.

**{¶26}** As the State points out, a trial court retains jurisdiction to correct errors so that judgment entries reflect the trial court's decision. *See State v. Contes*, 2024-Ohio-2580, ¶ 21 (8th Dist.); *State v. Liddy*, 2022-Ohio 1673, ¶ 16 (8th Dist.), citing *State ex rel. Cruzado v. Zaleski*, 2006-Ohio-5795, ¶ 19; Crim. R. 36.

**{¶27}** Accordingly, we sustain Maley's assignment of error.

## Conclusion

**{¶28}** We affirm the judgment of the trial court and remand the cause for the trial court to enter a nunc pro tunc entry reflecting that Maley was convicted of a fourth-degree misdemeanor.

Judgment affirmed and cause remanded.

**CROUSE** and **BOCK, JJ.,** concur.